Filed 5/12/26  P. v. Zepeda CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083230 |
| v. | (Super.Ct.No. FVA901805) |
| LUIS ORDONEZ ZEPEDA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lisa M. Rogan, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Luis Ordonez Zepeda appeals the order of the San Bernardino County Superior Court summarily denying his Penal Code section 1172.6 petition for resentencing.[1]  We will affirm.

## BACKGROUND[2]

In October 2009, defendant and three others (Lee Johnson, Roberto Tirado Osuna, and Lucio Jimenez) went to the home of Robert Ramirez for the purpose of stealing 60 kilograms of cocaine and about $100,000 in cash.  The robbery resulted in the death of Ramirez and Jimenez.

1. *Defendant Is Charged*

In April 2019, defendant and codefendant Johnson were charged in a second amended information with several offenses arising from their participation in the robbery including two counts of murder (§ 187, subd. (a), counts 1 & 2).  It was further alleged that, in connection with the murders (counts 1 & 2), (i) Johnson personally used a firearm (§ 12022.53, subd. (b)); (ii) he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); (iii) Johnson's personal and intentional shooting of a firearm caused great bodily injury and death of the victims, Ramirez and Jimenez (§ 12022.53,

---

[1] All further statutory references are to the Penal Code.

[2] The record on appeal is scant.  Some of the background facts have been taken from our opinion issued in *People v. Osuna* (Jan. 14, 2026, E081292) [nonpub. opn.].  We have taken judicial notice of that opinion on our own motion.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

2

subd. (d)); and (iv) the murders are serious and violent felonies within the meaning of sections 1192.7, subdivision (c)(8) and 667.5, subdivision (c)(8).[3]

2. *Defendant's Charges Are Evaluated After Passage of Senate Bill No. 1437*

While the charges against defendant were pending, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Stats. 2018, ch. 1015, § 4, effective January 1, 2019. That bill amended sections 188 and 189 to significantly limit the reach of the felony-murder rule and to eliminate the natural and probable consequences doctrine in cases of first- and second-degree murder as it applies to aiding and abetting. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Section 189 as amended by Senate Bill 1437, provides in relevant part that a participant in the perpetration of a robbery in which a death occurs is liable for first degree murder only if it is proven that the participant was either (i) the actual killer; (ii) was not the actual killer but with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of the first

---

[3] In addition to the two counts of murder and related enhancements, defendant and Johnson were charged with (i) assault on Frank Anthony Perez by means of force likely to produce great bodily injury with an allegation Johnson personally used a firearm causing the assault to become a serious and violent felony (§§ 245, subd. (a)(4), 1203.06, subd. (a)(1), 12022.5, subd. (a), and 1192.7, subd. (c)(8), count 3); (ii) first degree burglary with a person present other than an accomplice, a serious and violent felony (§§ 459, 667.5, subd. (c), 1192.7 subd. (c), count 4); and, (iii) attempted home invasion robbery while voluntarily acting in concert with two or more persons, a serious and violent felony during which a principal personally used a firearm, handgun, or shotgun (§§ 664, 211, 213, subd. (a)(1)(A), 667.5, subd. (c), 12022.53, subd. (b) & (e)(1), count 5).

degree murder; or, (iii) was a major participant in the underlying felony and acted with reckless indifference to human life.

The preliminary hearing in defendant's and Johnson's cases took place in 2014, five years before the Senate Bill 1437 amendments to section 189 became effective. In August 2020, the trial court heard Johnson's and defendant's motions made pursuant to sections 995 and 1172.6 to determine "whether or not the magistrate was correct in instituting a holding order with respect to [defendant] and Mr. Johnson in light of recent changes with respect to the felony murder rule" (the section 995 hearing).[4] Defendant and Johnson argued that they could not be charged with the murders of Ramirez (count 1) and Jimenez (count 2) because of the Senate Bill 1437 amendments to section 189.

At the section 995 hearing, the trial court made clear its familiarity with the cases discussed by the parties in their arguments, including *People v. Banks* (2015) 61 Cal.4th 788, 798–804 (*Banks*) [clarified the law concerning major participant findings by identifying a series of considerations to assist in the inquiry whether a defendant is a " 'major participant' "] and *People v. Clark* (2016) 63 Cal.4th 522, 611–623 (*Clark*) [reiterated the *Banks* elements and substantially clarified the considerations relevant to determining whether a defendant acted with reckless indifference to human life]. It then proceeded to provide a general overview of the facts as set forth in the preliminary hearing transcript, as follows:

---

[4] Former section 1170.95 was renumbered as section 1172.6 without change in the text, effective June 30, 2022 (Stats. 2022, ch. 58, § 10). We refer to the provision by its new numbering.

"Early in the morning on the date of the alleged crime, [a] friend of the deceased homeowner tried to enter the home and was accosted by several individuals who proceeded to pistol-whip and beat him and hold him on the ground. Shortly after the intruders entered the house, multiple shots were fired inside the home. After the smoke cleared, the homeowner and one of the intruders, later identified as suspect [Jimenez], were dead inside the house. Another intruder later identified as suspect Osuna was wounded and moaning and was seen crawling from the scene."

With respect to defendant's involvement in the crime, the preliminary hearing transcript revealed that, "[a]ccording to Mr. Osuna, [defendant] approached him about, quote, 'hitting a house,' end quote. Mr. Osuna testified that [defendant] was the one who knew about the drugs and the money. [Defendant] was the one who decided how the money would be split. [Defendant] was the one who met Mr. Osuna at the restaurant to plan the robbery. And when Mr. Osuna told [defendant] that he didn't have a gun, [defendant] said something to the effect of, 'Don't worry about it.' When the robbery took place, Mr. Osuna testified that he never saw [defendant] inside the house. When interviewed by Detective Delgado, [defendant] admitted to being part of a plan to rob the house for $100,000 and 70 packages of cocaine."

The trial court concluded that, as to both murders, defendant was a major participant who demonstrated a reckless disregard for human life. It found that defendant's involvement was not one of an unwitting participant in a robbery gone wrong but that he was instead a planner of the robbery. It was defendant who picked out the home, who knew the amount of money and drugs allegedly in the home, how the spoils

5

were to be divided, and he planned to make sure one of the participants would be armed and ready. The trial court denied defendant's section 995 motion except as to count 3, finding the evidence did not establish that defendant was involved in the assault on Perez.

3. *Defendant Pleads Guilty and Is Sentenced*

In October 2020, defendant pled guilty to the lesser included offense of manslaughter as to the murders in counts 1 and 2 (§ 192, subd. (a)), admitted to personal use of a firearm as to count 1 (§ 12022.5, subd. (a)) and pled guilty to robbery in concert (§ 213, subd. (a)(1)(A), count 5). In keeping with defendant's plea agreement the trial court sentenced defendant to a term of 25 years in state prison, consisting of an aggravated term of 11 years for the voluntary manslaughter (count 1, killing of Ramirez) with consecutive terms of 10 years for the use of a firearm (count 1), two years (one-third the middle term) for the voluntary manslaughter (count 2, killing of Jimenez), and two years (the middle term) for robbery (count 5).

4. *Defendant's Section 1172.6 Petition for Resentencing*

When Senate Bill 1437 amended sections 188 and 189, it also added section 1172.6 to provide a procedural mechanism for defendants to petition for retroactive relief if they could no longer be convicted of murder because of the amendments. (Sen. Bill 775 (2021–2022 Reg. Sess.); *Lewis*, *supra*, 11 Cal.5th at p. 959.)

In February 2023, defendant filed a section 1172.6 form petition seeking resentencing. In December 2023, the trial court denied the petition on the grounds defendant was not eligible for relief, apparently relying on the findings made by the judge who heard defendant's motions made pursuant to sections 995 and 1172.6 in December

6

2020 and found defendant was a major participant who showed reckless disregard for human life.

**DISCUSSION**

On appeal, defendant argues reversal of the order summarily denying his petition is called for because (i) it was error for the trial court to base its denial upon the findings at the section 995 hearing; (ii) had he gone to trial he could have been convicted on some theory other than felony murder involving imputation of malice as demonstrated by jury instructions that would have permitted him to be convicted of murder without a finding he personally harbored malice; and (iii) as to count 2, the People could have proceeded on a theory of provocative act murder, which defendant posits does not require a finding that defendant acted with express or implied malice.

A. *Statutory Backdrop*

To obtain section 1172.6 resentencing relief with respect to a murder conviction, a defendant must file a petition that alleges (i) a complaint, information, or indictment was filed against defendant that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder following a trial or after petitioner accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder; and (3) the petitioner could not now be convicted of murder or attempted murder because of

7

the changes made to sections 188 and 189, effective January 1, 2019. (§ 1172.6, subd. (a).)

Upon receipt of a petition that sets forth the required allegations, the trial court must conduct a prima facie analysis and hearing to determine the defendant's eligibility for relief. (§ 1172.6, subds. (b)(3) & (c); *People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, *supra*, 11 Cal.5th at pp. 957, 960.) Although the court should not reject the petition's factual allegations without first conducting an evidentiary hearing, it may make a credibility determination adverse to the defendant if the court's own documents refute those allegations. (*Lewis*, at p. 971.)

We review de novo the trial court's denial of a section 1172.6 petition at the prima facie stage. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

B. *The Trial Court Did Not Err When It Denied Defendant's Petition Because Defendant Is Not Eligible for Section 1172.6 Resentencing Relief*

Defendant is categorically ineligible for section 1172.6 resentencing relief as a matter of law because his October 2020 conviction occurred 21 months after Senate Bill 1437's amendments to sections 188 and 189 took effect in January 2019 and, therefore, the People could no longer pursue a murder conviction through an imputed malice theory. (*People v. Gallegos* (2024) 105 Cal.App.5th 434, 443 [resentencing under § 1172.6 is not available to a person who pled guilty to voluntary manslaughter after imputed malice theories had already been statutorily eliminated, that is, after the effective date of Senate Bill 1437]; in accord, *People v. Lezama* (2024) 101 Cal.App.5th 583, 590 (*Lezama*) [affirmed summary denial of section 1172.6 petition of a defendant who entered guilty

8

plea on voluntary manslaughter charge after Senate Bill 1437 eliminated imputed malice theories of murder liability]; *People v. Hickman* (2025) 110 Cal.App.5th 1262, 1270–1271 [affirmed, date of conviction for murder falling after Senate Bill 1437 conclusively established defendant's ineligibility for section 1172.6 sentencing relief].)

Defendant acknowledges that, had he gone to trial in 2020, he could not have been convicted on a "strict liability felony murder theory" or on a theory of natural and probable consequences because of the passage of Senate Bill 1437.  He argues, however, that he nevertheless should have been afforded a full resentencing hearing on the grounds that (i) the trial court's adoption of the outcome of the 2020 section 995 hearing was error and, (ii) a jury could have convicted him of murder in 2020 because a conviction based upon an imputation-of-malice theory in a murder case was still possible after Senate Bill 1437's amendments to sections 188 and 189.

(a)  *Defendant's Theory That Malice Could Have Been Imputed to Him After Senate Bill 1437*

In support of his claim that an imputation-of-malice theory in a murder case could have existed after Senate Bill 1437, defendant points to (i) language included when section 1172.6 was amended by Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, which he believes suggests a theory of imputation of malice in murder cases survived Senate Bill 1437's amendments to sections 188 and 189 and (ii) jury instructions in effect in 2020 that he speculated "would have been given at [his] trial," and which he asserts would have permitted the jury to impute malice to him.

Defendant's claim overlooks that Senate Bill 1437 amended sections 188 and 189 to ensure that murder liability is not imposed on any person who was not the actual killer, or did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Legis. Counsel's Dig., Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Stats. 2018, ch. 1015, § 1, subd. (f).) Those provisions governing liability for murder did not change when Senate Bill 775 was enacted to clarify that persons convicted of attempted murder or manslaughter were also eligible for section 1172.6 resentencing relief. (Legis. Counsel's Dig., Sen. Bill No. 775 (2021 Reg. Sess.) Stats. 2021, ch. 551, § 1, subd. (a).)

Contrary to defendant's assertion, the fact that the Senate Bill 775 amendment included the following italicized language: "A person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*" did not signal the existence of an imputation of malice in murder cases. Rather, as the report on Senate Bill 775 from the Assembly Committee explained, the added phrase was a "catchall provision" included to *clarify* that section 1172.6 resentencing relief " 'would be granted if the only way to have convicted the petitioner was through first degree felony murder, the natural and probable consequences doctrine, or, likely, second degree felony murder as they existed prior to January 1, 2019.' " (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 775 (2021–2022 Reg. Sess.) as amended July 6, 2021, p. 7; *Lezama*, *supra*, 101 Cal.App.5th at p. 590.)

10

Defendant also points to various jury instructions that he speculates would have been given if he had gone to trial in 2020, a trial which he posits could have resulted in his being convicted for murder either because the jury could have improperly imputed the direct perpetrator's malice to him as an aider and abettor or, as to allegations in count 2, imputed malice to him under the provocative act murder doctrine as to the killing of one of his accomplices, Jimenez.

Defendant cites case authorities supporting the notion that errors in instructions might adversely a jury's verdict or that a trial court might not fully understand the legal requirements necessary to a finding of direct aiding and abetting implied malice murder.[5] We do not fathom, however, how those authorities support the conclusion that the possibility that a murder conviction could be obtained in error—a potential in all convictions obtained by a jury or bench trial—makes defendant eligible for section 1172.6 resentencing relief even though his plea was entered long after Senate Bill 1437 became effective.

---

[5] Those cases are *People v. Powell* (2021) 63 Cal.App.5th 689, 714 [application of aiding and abetting for implied murder was not foreclosed by aiding and abetting instructions given, so error not to tailor the instructions for implied malice murder, but the error was harmless]; *People v. Langi* (2022) 73 Cal.App.5th 972, 976 [reversal of summary denial of section 1172.6 because trial court relied on factual conclusions in the reviewing court's opinion and the record of conviction does did not conclusively eliminate the possibility that the jury found the defendant guilty of murder on a theory under which malice was imputed to him based solely on his participation in a crime]. Defendant also cites *People v. Reyes* (2023) 14 Cal.5th 981, 983–984 in which the California Supreme Court reversed the denial of section 1172.6 resentencing petition after an evidentiary hearing because trial court either found the defendant was a direct perpetrator without sufficient supporting evidence, or it denied the petition under a direct aiding and abetting theory without understanding the legal requirements of direct aiding and abetting implied malice murder.

(b) *The Trial Court's Adoption of the Findings of the 2020 Section 995 Hearing*

Defendant argues the trial court erred when it relied on the findings made at the section 995 hearing was error because not only was the ruling in that hearing improperly bottomed on the preliminary hearing transcript but the trial court's consideration of that ruling at the prima facie hearing of his section 1172.6 hearing also constituted impermissible fact finding.

In view of our conclusion that defendant was categorically ineligible for section 1172.6 resentencing relief because his plea was entered after the Senate Bill 1437 amendments to sections 188 and 189 were effective, we need not address his claims concerning the trial court's apparent adoption of the 2020 section 995 findings in the course of the prima facie hearing on his 1172.6 petition.

**DISPOSITION**

The trial court's order summarily denying defendant's section 1172.6 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

FIELDS
J.

12